STATE of Wisconsin, Plaintiff-Respondent,

v.

Kenneth TRUMAN, Defendant-Appellant.†

Court of Appeals

*Nos. 93–0660, 93–0661. Submitted on briefs January 6, 1994.—Decided September 22, 1994.*

(Also reported in 523 N.W.2d 177.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Richard B. Jacobson* of *Borns, Macaulay & Jacobson* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *G. M. Posner-Weber*, assistant attorney general, of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Kenneth Truman seeks to withdraw guilty pleas he entered May 28, 1981, to charges that he sexually assaulted his stepdaughters, Tina and Sherri. He claims that newly-discovered evidence and conflicts in his stepdaughters' statements to the police entitle him to a trial to correct "manifest injustice." The newly-discovered evidence is that almost a year after the alleged assaults of Sherri, her hymen was intact. Truman argues that such evidence impeaches Sherri's statement to the police that he had sexual intercourse with her. His thesis is that if he had sexual intercourse with Sherri, she would not have an intact hymen.

Following sentencing, a defendant who seeks to withdraw a guilty plea must show by clear and convincing evidence that withdrawal is necessary to correct a "manifest injustice." *State v. Washington*, 176 Wis. 2d 205, 213, 500 N.W.2d 331, 335 (Ct. App. 1993). We conclude that Truman has not made that showing. Therefore, we affirm the order denying his motion.

To correct a manifest injustice revealed by newly-discovered evidence, the defendant must show:

> (1) [T]he evidence was discovered after trial; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue; (4) the evidence is not merely cumulative to the evidence presented at trial; and (5) a reasonable probability exists of a different result in a new trial.

*State v. Krieger*, 163 Wis. 2d 241, 255, 471 N.W.2d 599, 604 (Ct. App. 1991) (quoting *State v. Coogan*, 154 Wis. 2d 387, 394-95, 453 N.W.2d 186, 188 (Ct. App. 1990)). The burden is on the defendant who seeks to withdraw a guilty or no contest plea to show manifest injustice by clear and convincing evidence. *State v. Booth*, 142 Wis. 2d 232, 237, 418 N.W.2d 20, 22 (Ct. App. 1987).

We conclude that Truman was negligent in not seeking a physical examination of Tina and Sherri at the time he was charged. We further conclude that the medical evidence that almost a year after the alleged offense Sherri had an intact hymen was not material to the sexual intercourse issue.

A representation relating to a matter which is so substantial and important as to influence the party to whom made is "material." BLACK'S LAW DICTIONARY 976

(6th ed. 1990). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985), *quoted in State v. McCrossen*, 129 Wis. 2d 277, 294, 385 N.W.2d 161, 168-69, *cert. denied*, 479 U.S. 841 (1986). Evidence that after Truman's alleged assault Sherri's hymen was intact, if presented to a jury, would not have created a reasonable probability that Truman did not have sexual intercourse with Sherri.

"Sexual intercourse" does not require penetration which ruptures the female's hymen; it includes "any . . . intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening." Section 940.225(5)(b), STATS., 1979-80. At trial, the jury would be instructed as to the statutory definition of "sexual intercourse." The prosecutor would be allowed to argue to the jury that Truman's intact-hymen evidence was immaterial in view of the statutory definition of sexual intercourse. The prosecutor's position would be supported by substantial authority. *See, e.g., State v. Erickson*, 454 N.W.2d 624, 626 (Minn. Ct. App. 1990) (normal vaginal opening and intact hymen are not inconsistent with penile penetration); *State v. Padilla*, 110 Wis. 2d 414, 427, 329 N.W.2d 263, 270 (Ct. App. 1982) (medical testimony that alleged victim had intact hymen "did not render it impossible that [alleged victim] had sexual intercourse with her stepfather."). We therefore conclude that a reasonable probability does not exist that Truman would be acquitted if the jury heard evidence that after Truman's alleged assaults, Sherri's hymen was intact.

Sherri was examined by Dr. R. A. Holland on May 27, 1981, the day before Truman pled to the charges and almost a year after the alleged offenses. At the hearing on Truman's motion to withdraw his pleas, Dr. Holland testified to a reasonable degree of medical certainty that Sherri had not been "vaginally penetrated" by an erect adult penis. He was asked where the vagina began and he answered, "anatomy-wise there's an area called the vestibule which is external to the hymen, but ordinarily we would consider the vagina beginning at the hymen and extending superiorally from that."

██

Dr. Holland was asked whether he agreed with the following: "Contrary to folklore, presence or absence of the hymen cannot be used to prove or disprove virginity or history of sexual intercourse." TABER'S CYCLOPEDIC MEDICAL DICTIONARY 929 (17th ed. 1993). Dr. Holland testified: "I would say yes with an explanation that there [are] tremendous variabilities in the hymen[,] [a]nd there are cases where you can determine whether there's been sexual intercourse and there are cases where you cannot." He agreed that his definition of sexual intercourse required penile penetration of the hymen. His definition requires more than does § 940.225(5)(b), STATS., 1979-80. We therefore conclude that Truman failed to show clearly and convincingly that the intact-hymen evidence was material to the issue of whether Truman had sexual intercourse with Sherri.

██

Truman argues, however, that the intact-hymen evidence was material in this case because of how Sherri described one of the alleged assaults. He contends that Sherri's description is inconsistent with the presence of an intact hymen. She told the police her

stepfather's penis was erect, the intercourse took fifteen minutes, and he inserted his penis into her "hole." We do not see how it follows that this intercourse necessarily would have ruptured Sherri's hymen. Truman could have penetrated Sherri's vestibule without rupturing her hymen. We conclude that the presence of an intact hymen does not impeach Sherri's description of this incident.

Nor is Sherri's statement to the probation officer that she experienced pain for several days after Truman's alleged assault impeached by the presence of an intact hymen. It is true that Dr. Holland testified that Sherri's statement that she had pain for several days was not consistent with an intact hymen because pain is a result of tearing of the hymen and the associated bleeding and swelling. However, Dr. Holland conceded that mere pressure on the hymen could produce pain.

Truman contends, however, that when the fact that Sherri had an intact hymen after his alleged assaults is added to the evidence of Sherri's and Tina's conflicting statements, he has "a valid defense" to both charges. Sherri's statement of May 13, 1981, to the police contains numerous contradictions, and her description of sex orgies involving Truman and all five stepchildren are difficult to accept. There are also significant contradictions between her statement and Tina's. Because of these contradictions, a jury may not have believed Sherri and Tina if they testified to the same effect at trial. However, these statements were available to Truman prior to his plea and he was negligent in failing to seek this evidence. We, therefore, conclude that Truman has not shown by clear and convincing evidence that he should be allowed to withdraw his pleas to correct a manifest injustice.

The State acknowledges that its argument that Truman did not exercise "due diligence" may raise questions as to the effectiveness of trial counsel. However, Truman has not alleged that his trial counsel was ineffective. We, therefore, do not examine that question or the State's contention that the doctrine of judicial estoppel prevents Truman from claiming ineffective assistance of counsel.

*By the Court.*—Order affirmed.