STATE of Wisconsin, Plaintiff-Respondent,

v.

Benjamin J. BARNEY, Defendant-Appellant.

Court of Appeals

*No. 96–3240–CR. Submitted on briefs July 9, 1997.—Decided September 18, 1997.*

(Also reported in 570 N.W.2d 731.)

347

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David D. Cook*, of Monroe.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

DEININGER, J. Benjamin Barney appeals a judgment of conviction for sexually assaulting a child contrary to § 948.02(2), STATS., and an order denying his motion for postconviction relief. Barney had pleaded guilty to the charge and entered into a diversion agreement with the State, which was subsequently revoked. We reject Barney's claim that he should be allowed to withdraw his guilty plea because he did not understand the diversion agreement. He also claims, however, that the trial court erred by failing to consider whether there were any "reasonable and appropriate alternatives" to revocation, as required by the diversion agreement. Because the record fails to demonstrate that the trial court considered any "reasonable and appropriate alternatives" to revoking the diversion agreement, we reverse the judgment of conviction and remand for further proceedings.

## BACKGROUND

On June 25, 1991, Barney, then sixteen years old, went to the home of M.T., a fourteen-year-old female. The two went to a neighbor's house that M.T.'s family was watching while the neighbor was out of town. At the house, M.T. and Barney engaged in sexual inter-

course to which M.T. allegedly did not consent. In March 1993, nearly two years after the incident, a police officer came to M.T.'s house to investigate harassing phone calls for which Barney was a possible suspect. It was during this visit that M.T. first revealed to the police officer and her mother that Barney had nonconsensual sexual contact and intercourse with her during the June 1991 incident. The State filed a complaint charging Barney with one count of third-degree sexual assault, contrary to § 940.225(3), STATS.

Barney subsequently pleaded guilty, pursuant to a negotiated plea agreement, to second-degree sexual assault of a child, a violation of § 948.02(2), STATS. Under the terms of the plea agreement, Barney would not be convicted on the sexual assault charge but instead would be subject to a two-year diversion agreement. Additionally, as part of the plea agreement, the State agreed to dismiss an unrelated charge of operating a motor vehicle without the owner's consent and to reduce a pending felony bail jumping charge to misdemeanor bail jumping. The State further agreed to recommend probation, with jail time, on the reduced bail jumping charge.

The diversion agreement contained nine conditions which Barney was required to follow. The three specific conditions at issue here are:

> 1. [Barney is t]o commit no further violations of state or federal criminal law. For purposes of this agreement a "violation" will be found if a court of law finds probable cause from a criminal complaint to believe that the defendant has committed a criminal offense. Violations of the law do not include traffic forfeitures of Chapter 300's of the Wisconsin Statutes.
>
> . . . .

7. The defendant also must abide by all terms and conditions of his probationary sentence entered in Court File No. 93-CF–849. The defendant understands that any judicial reviews or revocation of said probation may result in the revocation of this Diversion Agreement.

. . . .

9. If the defendant is alleged to have violated a condition of the agreement, the State may bring a motion to revoke the Diversion Agreement. A hearing on the State's motion shall be held by the court. At such hearing, the defendant is entitled to the right to counsel and the right to present evidence. If the court finds by a preponderance of the evidence that the defendant has committed a violation of the agreement and there are no "reasonable and appropriate alternatives" to revocation of the agreement, the court shall then revoke the Diversion Agreement. If the court denies the State's motion, the Diversion Agreement shall remain in full force and effect until its expiration or a further motion to revoke the Diversion Agreement is filed.

On July 1, 1993, Barney appeared in the trial court to enter his pleas pursuant to the agreement described above. After the court completed a colloquy with Barney, however, the proceeding was continued when Barney, through his counsel, indicated some reluctance to proceed with the pleas. Barney's pleas were ultimately accepted by the court on July 8, 1993. The court approved the diversion agreement, and determined that Barney intelligently and voluntarily entered his pleas, understood the nature of the offenses, and comprehended the implications of the pleas. The court then: (1) adjudged Barney guilty of misdemeanor bail jumping but withheld sentence and placed Barney on two years probation, with conditions;

and (2) accepted the guilty plea to second-degree sexual assault of a child but "divert[ed] th[e] matter pursuant to the Diversion Agreement to Monday, July 10th, 1995."

The court thus deferred entering a judgment of conviction on the second-degree sexual assault charge. If Barney complied with the conditions of the diversion agreement for two years, the sexual assault charge would be dismissed without a judgment of conviction ever being entered. However, if any of the diversion agreement conditions were violated, Barney faced revocation of the agreement, conviction and sentencing on the felony.

One condition of the diversion agreement was that Barney "abide by all terms and conditions of his probationary sentence" entered in the bail jumping matter. Before consenting to the plea agreement, Barney and his first attorney discussed the diversion agreement requirements. That attorney testified as follows at a hearing on the State's motion to revoke the agreement:

> One of the things was, that we [Barney and his attorney] specifically touched on, was the bit about the probation. That was the first time I had seen that put in a diversion agreement.
>
> And we had some discussions about rejecting probation immediately, and then he wouldn't have to follow through with those conditions.
>
> I discussed it with my mentor, Elliott Levine, and he indicated that that wouldn't be acceptable most likely if I were to approach you [the prosecutor] with that. And that the reason they link them all together, that you made that kind of an offer to link them all together, was to get [Barney] on the probation and also to hold him to the diversion agreement.

I discussed that at some length with Mr. Barney, and we decided to go through with the plea anyway.

Barney's probation officer testified that the two met and "thoroughly" went over a written form containing the conditions of Barney's probation and the court order soon after the plea hearing. This involved reading each rule to Barney, having him sign the document containing the rules, and giving him a copy of the document. Additionally, the probation officer discussed the diversion agreement with Barney and informed him that such agreements routinely required that individuals "comply with all conditions of probation."

On September 16, 1993, the State filed a motion to revoke the diversion agreement, alleging Barney's failure to "abide by all terms and conditions of his probationary sentence." The State based its motion on a probation violation investigation report which revealed Barney had violated his probation on four occasions. The first three probation violations occurred on August 12, 1993, and consisted of: (1) suspected criminal damage to property; (2) failure to report police contact within seventy-two hours; and (3) leaving the State of Wisconsin without his probation agent's permission. The fourth violation occurred on September 3, 1993, when Barney tested positive for THC while in a detention facility.

Prior to the hearing on the State's motion to revoke the diversion agreement, Barney moved to vacate the agreement and "reopen" the case. After clarification from Barney, the trial court determined that Barney's motion was actually one to set aside the entire plea agreement and not just the diversion agreement. After hearing testimony and argument, the trial court denied Barney's motion to withdraw his plea and

352

granted the State's motion to revoke the diversion agreement. The court then adjudged Barney guilty of the second-degree sexual assault charge to which Barney had previously pleaded guilty. The trial court subsequently imposed and stayed a seven-year prison sentence, and placed Barney on probation for seven years, with one year of county jail confinement as a condition.

## ANALYSIS

### a. Standard for Withdrawal of Guilty Plea

A defendant who seeks to withdraw a guilty plea after sentencing must show that a "manifest injustice would result if the withdrawal were not permitted." *State v. Booth,* 142 Wis. 2d 232, 235, 418 N.W.2d 20, 21 (Ct. App. 1987); *State v. Reppin,* 35 Wis. 2d 377, 385–86, 151 N.W.2d 9, 13–14 (1967). However, a request to withdraw a guilty plea prior to sentencing "may be granted where the defendant presents a fair and just reason for doing so," provided the prosecution has not been greatly prejudiced due to its reliance upon the defendant's plea. *Booth,* 142 Wis. 2d at 235, 418 N.W.2d at 21; citing *State v. McKnight,* 65 Wis. 2d 582, 592, 223 N.W.2d 550, 555 (1974).

Thus, the first issue before us is whether Barney's motion to vacate the plea agreement was before or after "sentencing." This is a question of law which we decide de novo. *Ball v. District No. 4 Area Bd. of Vocational, Technical & Adult Educ.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). The State asserts, and Barney acknowledges, that " '[p]robation and similar dispositions are, and should be viewed as, sentences just like any other disposition following conviction.' " *Booth,* 142

Wis. 2d at 236, 418 N.W.2d at 22 (quoted source omitted). Barney notes, however, that the diversion agreement, unlike probation, is not a disposition *following conviction*, because the court will dismiss the charge with prejudice if Barney successfully completes the diversion agreement. Therefore, Barney argues that the pre-sentencing standard of "fair and just reason" should apply to his motion to withdraw his plea, instead of the post-sentencing standard of "manifest injustice."

The entry of a conviction and imposition of a sentence for the sexual assault did not occur until after the denial of Barney's motion to withdraw his plea. This court's analysis in both *Booth,* 142 Wis. 2d at 235–37, 418 N.W.2d at 21–22, and *State v. Nawrocke,* 193 Wis. 2d 373, 378–81, 534 N.W.2d 624, 626–27 (Ct. App. 1995), however, compels a conclusion that "sentencing," in this context, must encompass the initial disposition of a case after a plea, whether or not that disposition involves the actual imposition of a "sentence."

Barney's motion to withdraw his plea came only after the State had moved to revoke the diversion agreement. Barney thus knew when he sought withdrawal of his plea that he was facing a stiffer punishment for the felony offense than he originally contemplated when he entered the guilty plea. The higher burden of the "manifest injustice" standard is thus appropriate, since it is a deterrent to "defendants testing the waters for possible punishments" and acting out of " 'disappointment in the eventual punishment imposed.' " *Nawrocke,* 193 Wis. 2d at 379–80, 534 N.W.2d at 626 (quoted source omitted).

■

We conclude that the court's acceptance and ordered implementation of the diversion agreement constituted "sentencing" for purposes of determining the standard to be applied in deciding Barney's motion to withdraw his guilty plea. As in *Booth*, the trial court here specifically stated at Barney's plea hearing that "it's the judgment of the Court that sentencing is going to be withheld." We concluded in *Booth:*

> [T]hat the withholding of sentence and the imposition of probation, as those terms are used by the courts, are functionally equivalent to sentencing for determining the appropriateness of plea withdrawal. Booth was therefore subject to the post-sentencing "manifest injustice" standard in the consideration of his motion to withdraw his guilty plea.

*Booth,* 142 Wis. 2d at 237, 418 N.W.2d at 22. Similarly, we conclude that "manifest injustice" is the appropriate standard by which we must measure Barney's request to withdraw his plea following the approval and implementation of the diversion agreement.

### b. Manifest Injustice

■

In order to be allowed to withdraw his guilty plea, Barney has the burden to show the existence of "manifest injustice" by clear and convincing evidence. *State v. Truman,* 187 Wis. 2d 622, 625, 523 N.W.2d 177, 178 (Ct. App. 1994). This requires a showing of "serious questions affecting the fundamental integrity of the plea." *Libke v. State,* 60 Wis. 2d 121, 128, 208 N.W.2d 331, 335 (1973). Whether a defendant has met the manifest injustice standard is a matter within the sound discretion of the trial court. *Nawrocke,* 193 Wis.

2d at 381, 534 N.W.2d at 627. We will affirm the trial court's determination "if the record shows that the court correctly applied the legal standards to the facts and reached a reasoned conclusion." *Id.*

Although Barney urges us to apply the "fair and just reason" standard, he also argues that it is manifestly unjust to deny his motion to withdraw his plea because: (1) he was unaware of what a "judicial review" meant and was ignorant of the fact that revocation of the diversion agreement could be initiated for non-criminal probation violations; and (2) he was unaware that all probation rule violations would "automatically" result in the revocation of the diversion agreement.

Although the term "judicial review" may not have been fully explained to Barney, we conclude that the plain language of the diversion agreement, together with the colloquies between Barney and the court, show that Barney was aware that compliance with the requirements of his probation was necessary to fulfill the diversion agreement. Barney did not need to understand what a "judicial review" was in order to comprehend the consequences that would flow from his failure to meet the requirements of the agreement. The trial court noted:

> I think he fully and completely understood the plea agreement. I think he fully and completely understood that if he violated the rules of probation, whether it resulted in a judicial review or a revocation, if he violated the rules of probation, he was coming back here to be sentenced. And knowing that, he still entered the plea.

The trial court did not err in determining that a precise definition of "judicial review" was unnecessary in order

356

to afford Barney the requisite understanding of his plea.

We also do not accept Barney's claim that he did not understand that non-criminal activity could lead to the revocation of the diversion agreement. At the initial plea hearing, the court and Barney engaged in the following colloquy:

THE COURT: Do you understand that during that 24-month period [of the diversion agreement], you're going to be required to comply with all of the terms and conditions of this diversion agreement?

MR. BARNEY: Yes.

THE COURT: Do you understand that those conditions include, number one, that you will commit no further violations of state or federal criminal law?

MR. BARNEY: Yes.

. . . .

THE COURT: Do you understand that you will also abide by all of the terms and conditions of the probationary sentence which theoretically will be entered in the misdemeanor charge? Do you understand that?

MR. BARNEY: Yes.

Additionally, at the continued plea hearing, the trial court engaged in another colloquy with Barney:

THE COURT: Do you understand that during the course of the two years provided for in this Diversion Agreement, you're going to be required to comply with each and every provision of that agreement?

MR. BARNEY: Yes.

THE COURT: Do you understand that if you violate any of those conditions, at that point in time you will come back here, and I will immediately convict you on the felony, and I will immediately

sentence you on that felony? Do you understand that?

    MR. BARNEY:   Yes.

    THE COURT:   Now, do you understand that under the terms of this agreement, you're not to commit any further violations of state or federal criminal law?

    MR. BARNEY:   Yes.

■

    These colloquies show that Barney understood that, as a condition of his diversion agreement, he was to abide by all the terms and conditions of his probation. The colloquies also undermine Barney's argument that he thought only criminal violations of his probation conditions could result in revocation of the diversion agreement. The exchanges between Barney and the court, together with the plain language of the diversion agreement and the testimony of his first attorney, both quoted in the background summary above, show that Barney agreed to follow all the terms and conditions of his probation. Barney has not met his burden to demonstrate by clear and convincing evidence that he was not aware that probation violations, criminal or non-criminal, could result in the revocation of the diversion agreement. He has not established, therefore, that it would be manifestly unjust to deny his plea withdrawal request for that reason.

    Barney's second claim in support of his plea withdrawal request is that he was unaware that any probation rule violation would "automatically" lead to the revocation of the diversion agreement. Barney correctly notes that paragraph nine of the diversion agreement provides that revocation of the agreement was not automatic. Specifically, under the agreement, if the State alleged a violation of a condition of the

agreement, Barney was entitled to a hearing, with the right to counsel and the right to present evidence. Revocation of the agreement was further conditioned as follows: "*If the court finds* by the preponderance of the evidence that the defendant has committed a violation of the agreement and *there are no 'reasonable and appropriate alternatives' to revocation of the agreement,* the court shall then revoke the Diversion Agreement." (Emphasis added.)

The trial court's colloquy with Barney regarding the potential for revocation of the diversion agreement "over-warned" him of the consequences of a violation. During the plea proceedings, Barney was told that, if he violated the agreement, he would "immediately" be convicted and sentenced on the felony charge. As we discuss below, the court's *in terrorem* statements during the plea colloquy do not alter the express terms of Barney's agreement with the State. He is entitled to the benefit of the bargain he made, which, consistent with his understanding, is that he could not be "automatically" revoked for a violation of the agreement. Since his understanding of this aspect of the agreement at the time of his plea was correct, there is no manifest injustice in holding him to his plea, and we affirm the trial court's denial of his withdrawal request.

c. *"Reasonable and Appropriate Alternatives" to Revocation of the Agreement*

As we have discussed above, the diversion agreement requires that, before deciding whether to revoke the agreement for a proven violation, the trial court must consider whether there are any "reasonable and appropriate alternatives" to revocation. The record

359

fails to show that this was done. The trial court acknowledged as much at the postconviction hearing:

> As to whether or not the diversion agreement should have been revoked and was it properly revoked, I acknowledge that there were—that issue was somewhat skipped over at the time. The main issue at the time of the hearing was whether or not the plea should be withdrawn. And probably the reason it was skipped over was because it was so obvious that if there was a violation, it should have been revoked.

Moreover, the trial court stated its position at the postconviction hearing that consideration of "reasonable and appropriate alternatives" was not necessary because of the seriousness of the offense:

> Again, eleven, twelve years on the bench, I don't recall anybody ever getting a diversion agreement for such a serious offense. And because, because of that, *any* violation, no matter how minor, would have to be considered as a serious violation.
>
> And when you consider the seriousness of the offense, it was obvious that if he was not going to be able to comply with the terms of the diversion agreement, something stronger was needed. And *any* violation at that point in time had to involve revocation. It had to involve something more serious than the diversion agreement, something more structured, something more formal.

(Emphasis added.)

If the court was unwilling, under any circumstances, to consider alternatives to revocation of the agreement following *any* violation, the court should have so informed Barney prior to accepting his plea and implementing the diversion agreement. If acceptable to Barney and the State, the diversion agreement

could have been formally amended in this regard. That did not occur, and the trial court entered an order approving the agreement as submitted. The court was thus obligated thereafter to follow the terms of the agreement regarding revocation proceedings.

The State argues that because Barney failed to ask the court to exercise its discretion, and because he, himself, did not recommend any "reasonable and appropriate alternative" to revocation of the diversion agreement, he has waived this claim. The State cites *State v. Gollon,* 115 Wis. 2d 592, 604, 340 N.W.2d 912, 918 (Ct. App. 1983), for the proposition that courts "will not find an abuse of discretion where the defendant failed to ask the trial court to exercise its discretion." We conclude that the cited language from *Gollon,* which we applied there to a trial court's discretionary evidentiary ruling, is inapposite and the State's waiver argument must fail.

The purpose of a revocation hearing, as described in the diversion agreement, is to determine whether Barney had violated the agreement, and if so, what sanctions should be imposed for the violation. The latter aspect of the revocation proceeding, therefore, calls for the exercise of discretion, not unlike that exercised at sentencing. A defendant need not specifically request a sentencing court to consider whether fines, probation or jail time should be imposed. Neither must a probationer request that alternatives to probation revocation be considered after a violation of probation rules has been established. The exercise of discretion for those purposes is mandatory. *See McCleary v. State,* 49 Wis. 2d 263, 276–91, 182 N.W.2d 512, 519–26 (1971), and *State ex rel. Plotkin v. DHSS,* 63 Wis. 2d 535, 541–45, 217 N.W.2d 641, 644–46 (1974).

By the same token, Barney should not have to specifically ask the court to consider "reasonable and appropriate alternatives" to revocation. The diversion agreement he signed with the State requires the court to do so. We do not decide whether the State must include a "reasonable and appropriate alternatives" clause in diversion agreements of the type here under consideration. That issue is not before us. We conclude only that once this term was included in the diversion agreement, Barney was entitled to rely on it and have it applied at his revocation hearing.

We therefore reverse the judgment of conviction for second-degree sexual assault and the order denying postconviction relief. On remand, the trial court is to hold a hearing, consistent with the foregoing, that complies with the requirements of paragraph nine of the diversion agreement.

*By the Court.*—Judgment and order reversed and cause remanded with directions.