HECHT, Justice
(dissenting).
As I believe Olsen was not a felon when he possessed a firearm in Iowa, I cannot join the majority opinion in this case. My analysis begins with Iowa Code section 724.26(1), the statute in question here. It provides:
A person who is convicted of a felony in a state or federal court, or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult, and who knowingly has under the person’s dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class “D” felony.
Iowa Code § 724.26(1) (2013). The first element of the offense is the defendant’s status as a felon. Accordingly, the State must prove in this case that Olsen was “convicted of a felony” in Wisconsin in 2009 before he possessed a firearm in Iowa and was charged in this case. See State v. Sanborn, 564 N.W.2d 813, 817 (Iowa 1997) (‘“[Ajbsent defendant’s concession or admission made of record, the State, as part of its case in chief, was required to show defendant’s status as a felon.’ ” (quoting State v. Walton, 311 N.W.2d 110, 112 (Iowa 1981))).
Favoring a functional assessment based upon Iowa law, the majority explores whether the result of the Wisconsin prosecution would be considered a conviction under Iowa law. Eschewing “the definitional vagaries of out-of-state law,” the majority utilizes Iowa’s definition of “conviction” in deciding whether Olsen was convicted of a felony in Wisconsin. Although I concede Iowa law does not contain an explicit provision requiring us to look to the law of Wisconsin in determining whether Olsen was convicted in 2009,1 believe we should. The crime committed by Olsen occurred in Wisconsin and all of the actors in the resulting court proceedings acted in that state, not in Iowa. Our analysis of whether the Wisconsin proceeding produced a conviction should likewise be controlled by what occurred there — not by what would have occurred had the events transpired in Iowa or elsewhere.[2] *375 Reliance instead on the “fact” of the Wisconsin judgment without consideration of what actually happened there runs the risk of jeopardizing significant procedural, substantive, and constitutional interests that might preclude consideration of the judgment had it occurred here. See, e.g., Wayne A. Logan, Horizontal Federalism in an Age of Criminal Justice Interconnectedness, 154 U. Pa. L. Rev. 257, 278 (2005) (noting “greater tolerance for different procedures used in [sister] states” may “often translate[ ] into a disregard of the procedural norms that would otherwise preclude consideration of such convictions if they had occurred in-state”); cf. Wayne A. Logan, Creating A “Hydra in Government”: Federal Recourse to State Law in Crime Fighting, 86 B.U. L. Rev. 65, 82 (2006) (“To complicate matters further still, predicates are eligible for use even if secured by constitutionally invalid means. This is because the ‘federal gun laws ... focus not on reliability, but on the mere fact of conviction ... in order to keep firearms away from potentially dangerous persons.’ ” (footnote omitted) (quoting Lewis v. United States, 445 U.S. 55, 67, 100 S.Ct. 915, 922, 63 L.Ed.2d 198, 210 (1980))); Restatement (Second) of Conflict of Laws § 107, at 320 (“A judgment will not be recognized or enforced in other states insofar as it is not a final determination under the local law of the state of rendition.”). As I believe that approach is neither desirable nor necessary here, I turn to the legal effect of what actually occurred in the Wisconsin court.
Everyone in the Wisconsin courtroom— including most importantly the judge and the prosecutor — believed Olsen was not convicted of a felony as a consequence of the 2009 deferred judgment. Olsen’s careful Wisconsin counsel specifically inquired of the court whether Olsen would be able to hunt with a firearm after the deferred judgment proceeding. The court replied, “Yes, he can.” This statement made by the judge is, in my view, crucially important to our determination of whether the deferred judgment proceeding resulted in a felony conviction not only because of the words spoken by the key actor in the room, but also because of the words he did not utter. Wisconsin law mandates the court shall inform a defendant sentenced or placed on probation for a felony conviction of the restriction on his right to possess firearms. See Wis. Stat. § 973.176(1) (2007-2008), https://docs.legis.wisconsin. gov/2007/statutes/prefaces/toc (“Whenever a court imposes a sentence or places a defendant on probation regarding a felony conviction, the court shall inform the defendant of the requirements and penalties under [the statute precluding felons from possessing firearms].”). The prosecutor confirmed the judge’s assurance that a conviction affecting Olsen’s right to possess firearms did not result from the proceeding, stating Olsen would suffer “[n]o disability that way at all.”
My conclusion — and the Wisconsin court’s conclusion — that a conviction did not result from the 2009 proceeding is supported by other evidence in the record. The Wisconsin court memorialized the proceeding in an order stating “acceptance of the plea and adjudication for the offense ... is stayed for four (4) years from 08/25/09.” (Emphasis added.) Thus, although Olsen entered a plea of nolo contendere to the felony charge, the Wisconsin court did not formally or aetu *376 ally accept or implement it.[3] Instead, the court stayed acceptance of the plea pending Olsen’s compliance with the terms of the deferred judgment arrangement. In the absence of an accepted plea or an adjudication of guilt, Olsen surely did not attain the status of “felon” under Wisconsin law, and the statements of the Wisconsin judge and prosecutor quoted above were both accurate and sensible.[4] See, e.g., Quentin Brogdon, Admissibility of Criminal Convictions in Civil Cases, 61 Tex. B.J. 1112, 1116 (1998) (“If the judge in the criminal case determines that the criminal defendant violated the terms of his or her probation, the judge may ‘revoke’ the probation (if the probation was a straight probation) or ‘adjudicate’ the probation (if the probation was a deferred adjudication probation), and convert it into a final conviction. The distinction between the two types of probation may be significant because a deferred adjudication probation cannot be a ‘conviction’ under Texas law....”). This should be the end of it. No prior felony conviction, period.
The majority looks beyond the Wisconsin court’s unmistakable declaration that no conviction resulted from the 2009 proceeding. Turning its attention away from the expressed understanding of the Wisconsin judge and prosecutor about the legal effect of the Wisconsin proceeding, the majority recharacterizes the legal effect of what occurred there as if it had been an Iowa court proceeding based on Iowa law. I find this recharacterization unattractive because of the extreme unfairness it visits upon Olsen — who had been assured by a judge and prosecutor that his right to possess firearms would be unimpaired because he had not been convicted of a felo *377 ny. Although this court is understandably more confident in articulating Iowa legal principles than those prevailing elsewhere, we should give appropriate respect and deference to the Wisconsin court in our determination of whether that court convicted Olsen. After all, Olsen was prosecuted there — not here — for the purported predicate offense. I suspect the Wisconsin judge would prefer any reversal of his determination of the legal effect of his decision come from the supreme court of that state, not from this court.
Unlike the majority, I do not believe our decision in State v. Deng Kon Tong, 805 N.W.2d 599 (Iowa 2011), is helpful in answering the question whether Olsen was convicted of a felony in the Wisconsin proceeding. In Deng Kon Tong, we held a defendant’s plea of guilty entered in an Iowa prosecution resulting in an Iowa deferred judgment and probation constituted a predicate conviction for purposes of Iowa Code section 724.26. Deng Kon Tong, 805 N.W.2d at 603. We properly determined in that case the legal effect of a predicate guilty plea entered by a defendant in an Iowa court and the resulting deferred judgment issued by an Iowa court. We noted two alternative conceptions of the term “conviction” under Iowa law in Deng Kon Tong. Id. at 601. First, we explained, courts have looked to the procedural history of a prior Iowa prosecution and found a conviction if the defendant entered a guilty plea or was convicted of a felony offense by a fact finder. Id. (citing State v. Kluesner, 389 N.W.2d 370, 372 (Iowa 1986)). The second conception of “conviction” articulated in our earlier cases focuses on whether a “ ‘final consummation of the prosecution against the accused in-eluding the judgment or sentence rendered’ ” has occurred.[5] Kluesner, 389 N.W.2d at 372 (quoting State v. Hanna, 179 N.W.2d 503, 508 (Iowa 1970)); see also Deng Kon Tong, 805 N.W.2d at 601.
Our choice between the two conceptions of “conviction” in prior decisions of this court has ostensibly been driven by whether the purpose of the statute requiring a predicate prior conviction was punishment of the defendant or protection of the public. Deng Kon Tong, 805 N.W.2d at 602. Yet, the distinction between these purposes is sometimes of limited analytical usefulness because, as we observed in Deng Kon Tong, criminal statutes are commonly calculated to achieve both purposes. Id. In this case, however, I conclude it is pointless to consider which of the two conceptions might have application because neither should lead us to a determination Olsen was convicted in the Wisconsin proceeding.
Even if it were appropriate — and I do not believe it is — to apply Iowa law in determining the legal effect of a Wisconsin criminal proceeding, I would conclude the State of Iowa failed to prove Olsen was convicted in the 2009 Wisconsin proceeding. As I have already noted, the Wisconsin court’s acceptance of the nolo conten-dere plea was stayed until August 2013 pending Olsen’s compliance with the behavioral requirements of the deferred judgment. Thus at the time of the subsequent Iowa-prosecution, there was no prior accepted or judicially recognized Wisconsin plea that could constitute a prior conviction under the first conception of “conviction” described in Deng Kon Tong and Kluesner. See Deng Kon Tong, 805 *378 N.W.2d at 601; Kluesner, 389 N.W.2d at 372.
Similarly, the adjudication of Olsen’s criminal liability as a consequence of the stayed plea and potential sentence for the Wisconsin conduct qualifying as a felony were also stayed in 2009 such that no adjudication of guilt or sentence constituting a “conviction” resulted from the Wisconsin court proceeding under the second conception of that term described above.
Our decision in Sanborn is also distinguishable and therefore not helpful to our analysis of whether the State proved Olsen had been convicted of a qualifying predicate offense. See 564 N.W.2d at 816-17. In that case, as here, the defendant, San-born, was prosecuted under Iowa Code section 724.26 based on an alleged predicate offense that occurred in another state. Id. at 814-15. Sanborn did not, however, challenge the state’s proof that he had been convicted of the alleged predicate offense. He instead challenged the state’s proof that the out-of-state conviction was a felony offense. Id. We concluded in San-born that the definition of “felony” (exceeding one year in prison) in Iowa Code section 724.25 is controlling — not the foreign jurisdiction’s classification of the offense — on the question of whether the predicate crime is classified as a felony in this context. Id.
Although our general assembly defined “felony” for purposes of identifying the class of offenses qualifying as predicate offenses under section 724.26, it has not defined “convicted” in this context. The legislative silence has created ambiguity here, and the majority’s interpretation of “convicted” in light .of this ambiguity is inconsistent with our longstanding recognition of the notion “that penal statutes are to be interpreted strictly with doubts therein resolved in favor of the accused.” State v. Muhlenbruch, 728 N.W.2d 212, 216 (Iowa 2007); cf. State v. Langlands, 276 Ga. 721, 583 S.E.2d 18, 21 (2003) (explaining, in felon-in-possession case, “[legislative] silence creates an ambiguity, in that a person of ordinary intelligence could fail to appreciate that the definition was meant to look past the treatment given a criminal offense by an out-of-state jurisdiction”); Walthart v. Bd. of Dirs. of Edgewood-Colesburg Cmty. Sch. Dist., 667 N.W.2d 873, 877 (Iowa 2003) (noting statutory silence may create ambiguity and compel resort to rules of statutory construction); State v. White, 545 N.W.2d 552, 555 (Iowa 1996) (“Ambiguity exists when reasonable minds differ or are uncertain as to the meaning of a statute.”).
By contrast, I view the legislative omission as consistent with the approach taken by Congress in 18 U.S.C. § 921(a)(20) (2012), which provides that a “conviction” for purposes of the corollary felon-in-possession statute should be determined in accordance with the law of the jurisdiction in which the proceedings were held. This approach is consistent with principles of federalism in our federal system. If applied here, as I think it should be, it also is an approach that advances principles of comity and deference owed to the courts of other jurisdictions.
In conclusion, the Wisconsin court clearly understood and communicated that the proceeding before it did not result in a conviction of a felony offense. My review of the Wisconsin statutes and caselaw leads me to conclude the Wisconsin court got it right. Our court should not second-guess the Wisconsin court’s understanding of “convicted” — especially where the general assembly has not defined the term as used in section 724.26, a statute restricting a valued constitutional right. Indeed, the majority’s interpretation of “convicted” as applied to Olsen might raise substantial *379 doubts about the statute’s constitutionality. See, e.g., United States v. Kitsch, No. 03-594-01, 2008 WL 2971548, at *7 (E.D.Pa. Aug. 1, 2008) (“A statute that imposes criminal penalties for the exercise of an enumerated constitutional right despite defendant’s reasonable belief in good faith that he has complied with the law must, at the very least, raise constitutional doubts.”). Our doctrine of constitutional avoidance compels us to avoid such constitutionally problematic constructions where fairly possible. See, e.g., State v. Iowa Dist. Ct., 843 N.W.2d 76, 85 (Iowa 2014).
Accordingly, I respectfully dissent.
WIGGINS and WATERMAN, JJ, join this dissent.

. I believe Iowa Code section 724.25, defining "felony,” provides additional support for this outward-looking approach. This provision directs us to determine, for purposes of finding a felon in possession, whether the prior offense was "punishable in the jurisdiction where it occwred by imprisonment for a term exceeding one year,” and makes no mention, *375 by contrast, of consideration of how the offense may have been treated in Iowa. See Iowa Code § 724.25(1) (emphasis added).

. That the court did not accept Olsen's plea, but instead stayed its acceptance, was surely of great significance to the court’s understanding that the legal effect of the proceeding fell short of a conviction. In State v. Wimmer, the Wisconsin Court of Appeals concluded a guilty plea in a battery case qualified as a predicate conviction under a "repeater statute” imposing more severe penalties for second and subsequent domestic battery offenses. 152 Wis.2d 654, 449 N.W.2d 621, 621, 625 (App.1989). The court concluded that "once the court has accepted a guilty plea or verdict, the 'conviction' becomes sufficiently final to trigger the operation of the repeater statute.” Id. at 625 (emphasis added). In a more recent case, the Wisconsin Court of Appeals concluded a guilty plea accepted by a trial court in connection with the implementation of a diversion agreement "constituted 'sentencing' for purposes of determining the standard to be applied in deciding [a] motion to withdraw [a] guilty plea.” State v. Barney, 213 Wis.2d 344, 570 N.W.2d 731, 735 (App.1997).

. I acknowledge some of the Wisconsin court's statements on the record during the proceeding were unclear. Although at one point the court stated ‘TO find him guilty,” I conclude this statement is best understood as an explanation of what could happen at some future date if Olsen fails to comply with the requirements of the deferred judgment. My forward-looking understanding of the statement is informed by another comment made by the court and couched as a hypothetical during the same proceeding: "No, if I accept his plea, then set it for sentencing, then.” Summarizing the legal effect of the proceeding in another part of the colloquy, the Wisconsin court stated, "We’ll find him guilty, but it's not of record, though. No conviction will show up on that.” When understood in the context of the entire proceeding and in light of the order memorializing the effect of the proceeding, I believe the Wisconsin court neither accepted Olsen’s plea nor adjudicated his guilt. I conclude the most accurate and controlling articulation of the effect of the proceeding is found in the court’s written order entered after the hearing, announcing the legal effect of what occurred there. Cf. Wimmer, 449 N.W.2d at 625 (noting courts correctly rely on written judgments and it "is only when th[e] written document is unavailable or has not yet been prepared that the court will have to refer to other sources to determine whether an individual has been 'convicted.' ”).

. The Wisconsin court has explained at least two possible definitions of "conviction” are recognized in Wisconsin: "a popular meaning indicating a finding of guilt and a more technical legal meaning referring to the entire procedural process resulting in a judgment and sentence.” Wimmer, 449 N.W.2d at 622. Of these two meanings of the term recognized in Wisconsin, the former is the more common usage. Id.