COURT OF APPEALS
DECISION
DATED AND FILED

**January 24, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP419-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF485

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

JONATHON WAYNE ALLEN BEENKEN,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Monroe County: MARK L. GOODMAN, Judge. *Reversed and cause remanded with directions.*

¶1 KLOPPENBURG, J.[1] The circuit court entered an order denying the State of Wisconsin's motion to revoke the diversion agreement that was

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(g) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

entered in this case upon Jonathon Wayne Allen Beenken's no contest plea to a felony count of substantial battery as a repeater and as domestic abuse. In that same order, the court also denied the State's motion for reconsideration. On appeal, the State argues that the court erroneously interpreted and applied the diversion agreement and that, properly interpreted and applied, the diversion agreement required the court to grant the State's motion to revoke the agreement because the State introduced a criminal complaint showing probable cause that Beenken had violated a criminal law.

¶2    For the reasons set forth below, I conclude that the clear and unambiguous terms of the diversion agreement required the circuit court to revoke the agreement if the State showed probable cause that Beenken violated a criminal law. I also conclude that the criminal complaint introduced by the State in support of its motion established probable cause. Accordingly, I reverse the court's order denying the State's motion to revoke and remand to the circuit court with directions to enter an order granting the motion to revoke the diversion agreement and to hold further proceedings as the court deems appropriate.[2]

## BACKGROUND

¶3    In 2019, the State charged Beenken with several felony and misdemeanor counts arising from a domestic abuse incident. In March 2021, Beenken pled no contest to one count of substantial battery as a repeater and as

_____

[2] Because I reverse the circuit court's decision denying the State's motion to revoke on my de novo review, I do not separately address its decision denying the State's motion for reconsideration, but that order is reversed based on the discussion in this opinion. *Cf.* ***Kraft v. Steinhafel***, 2015 WI App 62, ¶27, 364 Wis. 2d 672, 869 N.W.2d 506 ("Because we reverse the circuit court's grant of summary judgment[], we need not address separately the court's denial of Kraft's motion for reconsideration.").

domestic abuse, and the remaining counts were dismissed and read in. Upon entry of his plea, the prosecution was suspended and Beenken was "placed on a diversion agreement" for twenty-four months, through March 2023.

¶4     The diversion agreement contains several conditions, including that Beenken submit monthly compliance reports, undergo a domestic violence assessment, follow through on any treatment recommendations, maintain contact with the Monroe County Justice Department, and, pertinent here, not violate any criminal laws. Specifically, paragraph two of the diversion agreement says:

> The defendant shall not violate any criminal or criminal traffic laws. In order for the State to show a violation of any criminal or criminal traffic law, the State must show by probable cause, that a violation of that law has been committed. It is sufficient that the State show this by introducing the criminal complaint but is not limited by that method. A hearing will be held in order to determine whether there is probable cause that a violation of paragraph two (2) has been committed. If the State presents evidence to the level of probable cause that any violation occurred, the Court shall revoke this agreement [and] find the defendant guilty.

¶5     Paragraph seven of the diversion agreement provides that the State shall move to revoke the diversion agreement "upon the defendant's failure to meet or comply with any condition" of the agreement, and paragraph five provides that "upon revocation, the Court will enter a finding of guilt [on the substantial battery count] and will proceed to sentencing the defendant." Paragraph seven also provides that, "upon successful completion of this agreement[,] the State will amend Count 3 to Disorderly Conduct as an ordinance [violation] … with a fine of $100.00 plus costs."

¶6     In November 2021, the State filed a motion to revoke the diversion agreement, alleging that Beenken violated a criminal law contrary to paragraph

two of the diversion agreement. In February 2022, the State and Beenken stipulated to a six-month extension of the diversion agreement, through September 22, 2023, and the State withdrew its motion to revoke. The circuit court entered an order consistent with this stipulation.

¶7 On August 31, 2023, the State again moved to revoke the diversion agreement, alleging that Beenken violated criminal laws contrary to paragraph two of the diversion agreement. The State attached to the motion the criminal complaint in Juneau County case No. 2023CF160. The complaint alleged that Beenken committed felony bail jumping, misdemeanor battery, and disorderly conduct. In the motion, the State also related Beenken's compliance with other conditions of the diversion agreement, namely his completing a domestic violence assessment and continuing with mental health therapy, and his maintaining contact with the Monroe County Justice Department. This second motion to revoke is the subject of this appeal.

¶8 On December 6, 2023, the circuit court held a hearing on the motion pursuant to paragraph two of the diversion agreement. At the hearing, the State introduced the criminal complaint, which contains the following factual allegations. On July 23, 2023, Officer Smart of the Black River Falls Police Department was dispatched to Black River Falls Memorial Hospital where he met with A.B. and observed several injuries to A.B., including a bloody lip, bruises on her hands, and red marks around her face and head.[3] A.B. told Smart the following: she had been dating Beenken for about two or three months; every

---

[3] To protect the dignity and privacy of the victim, we refer to her as A.B., using initials that do not correspond to her real name. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

time she tried to leave the relationship with Beenken she would "get her ass kicked," and, in the past week and a half, she had "tried to leave six times and there was domestic violence each time"; at approximately 11:30 a.m. on the morning of July 23, she tried to leave Beenken, and Beenken "began to beat her with closed fists and she was forced to cower in the 'fetal position' as he hit her"; "all of the visible marks [on her] were from th[is] incident"; and Beenken told her that if she called the police, they "'better be ready for a shootout' because he was not going back to jail." After speaking with Smart, Deputy Carmody of the Juneau County Sheriff's Department spoke to M.L.B., who told Carmody that at approximately 11:00 a.m. that day, M.L.B. had seen A.B. running from Beenken "with blood coming from her mouth and yelling at [Beenken] to get away from her," that A.B. then locked herself in her car while Beenken pounded on her window, and that A.B. drove away at a high rate of speed and Beenken "chased" her in his truck.

¶9 Also at the hearing, Beenken submitted an unsigned statement by A.B. The statement reads, in its entirety:

> I am recanting the probable cause that was written on my beha[lf] because it is wrong and it is not what really happened. First off Deputy Brandon Carmody contacted me at my uncle[']s home where he called me and I told him on the phone I would not talk to him [and] that I did not trust the Sheriff's department at all. I told him that yes [Beenken] chased me but that he did not have a gun which is true. I did see Officer Smart at the hospital but I did not say that every time I tried to leave I got my ass kicked. I did not say I tried to leave 6 times. I would love to give an actual statement of what happened that day and the days that led to the incident but this is pro[o]f enough that there is no one in this sherri[ff's office] that can be trusted. I feel like I can't talk to anyone here about it because they make up their own version and mix my words up.

¶10   The circuit court marked A.B.'s statement as an exhibit, noting that "[i]t's not being received as evidence but the Court did look at it and so I think it's important that it be part of the file." Beenken argued that the statement "cut against the probable cause" and, therefore, that the court should "deny the State's motion and allow the [diversion] agreement to expire by its own terms." The State responded that "[a]t best, [the statement] is a partial recantation" because A.B. did not "correct, supplement or otherwise recant … the[] specific allegations of physical assault … inflicted by Mr. Beenken," and, accordingly, even if A.B.'s statement were accepted as true, there remained probable cause that Beenken committed a crime in violation of the diversion agreement.

¶11   In making its decision, the circuit court stated that "this is a pretty close call." The court recognized that the language of the diversion agreement "forbids" Beenken from violating any criminal law and that presenting a copy of the criminal complaint "would be sufficient" to show probable cause, which is "what the State has done." However, the court reasoned that "the motion today paints a fairly positive picture of Mr. Beenken" regarding his compliance with other terms of the diversion agreement. The court recognized that Beenken had completed the required domestic violence assessment, followed through on recommended treatment, continued to see his mental health provider, and maintained contact with the Monroe County Justice Department as required.

¶12   After reflecting on the seriousness of the charges, the circuit court explained that it "would have to side with [Beenken] … because of his … mostly positive performance" on the other terms of the diversion agreement. More specifically, the court explained:

> Go back to what I said earlier, this is a very grave
> charge. It's a Class I felony but it's got enhancements on

it. And I had to think carefully about whether what was said in the Juneau County case should tag Mr. Beenken with the felony – convicted felony record. But it's tough. Certainly [the State] is within [its] discretion to bring this motion and so there is a lot – there is a lot here[:] [t]he State's right to do this and certainly this man's … substantial compliance with the terms [of the diversion agreement]. So I have to balance those and it's a tough decision.

I think what I have to do, I would have to side with the Defendant on this, then, because of his – because his mostly – mostly positive performance and we do have another charge. It's dressed up with some felony bail jumping and misdemeanor [battery]. And I think if I have to weigh everything out, I have to come down on his side because he's had a mostly positive – we have a lot of these motions and I don't see, in a lot of these motions, where he's been able to go beyond what he's done. Like I said, most [of] the people, they stub their toe on the domestic violence assessment and he's done that and so that shows that he's invested a substantial effort into this. So I'm not going to revoke his agreement for those reasons.

Accordingly, the court denied the motion.

¶13     The State filed a motion for reconsideration, arguing, in part, that because the diversion agreement states that the circuit court "**shall** revoke the diversion agreement" upon a showing of probable cause, the court acted "contrary to established law" by exercising discretion, specifically by weighing Beenken's substantial progress with other conditions of the diversion agreement against his alleged violation of a criminal law. The court denied the motion without comment on December 21, 2023. On February 27, 2024, the court entered an order denying both the motion to revoke and the motion for reconsideration and amending Beenken's original substantial battery count to disorderly conduct, consistent with successful completion of the diversion agreement.

¶14     The State appeals.

## DISCUSSION

¶15    I first interpret the diversion agreement and explain my conclusion that it requires the circuit court to revoke the agreement if the State shows probable cause that Beenken violated a criminal law.  I then apply the diversion agreement and explain my conclusion that the criminal complaint introduced by the State makes that showing.

### I.  Interpretation of Diversion Agreement

¶16    In reviewing whether the circuit court properly denied the State's motion to revoke the diversion agreement, I must first interpret the agreement because the circuit court is bound by its terms.  *See **State v. Barney***, 213 Wis. 2d 344, 358-59, 570 N.W.2d 731 (Ct. App. 1997) (interpreting diversion agreement's terms regarding revocation to determine whether the circuit court's revocation of the agreement was proper and stating that the circuit court is obligated to follow those terms).

¶17    In interpreting a diversion agreement, this court draws on contract principles.  *See **Barney***, 213 Wis. 2d at 359 (stating that the defendant is "entitled to the benefit of the bargain he made" via the diversion agreement as part of the plea agreement); *see also **State v. Windom***, 169 Wis. 2d 341, 348, 485 N.W.2d 832 (Ct. App. 1992) ("A plea agreement is analogous to a contract and we therefore draw upon contract law principles for its interpretation.").  This court interprets a contract de novo.  ***Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC***, 2018 WI 112, ¶38, 384 Wis. 2d 669, 920 N.W.2d 767.  "The law in Wisconsin is that unambiguous contractual language must be enforced as it is written," ***Windom***, 169 Wis. 2d at 348, and courts must similarly enforce diversion agreements as written, ***Barney***, 213 Wis. 2d at 362.

Pertinent here, the circuit court is "obligated … to follow the terms of the [diversion] agreement regarding revocation proceedings." *Id.* at 361.

¶18 "Whe[n] the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶26, 348 Wis. 2d 631, 833 N.W.2d 586. "Such language is to be interpreted consistent with what a reasonable person would understand the words to mean under the circumstances." *Seitzinger v. Community Health Network*, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426. For the following reasons, I conclude that the only reasonable interpretation of paragraph two of the diversion agreement is that the circuit court is required to revoke the agreement upon a showing of probable cause that Beenken violated a criminal law.

¶19 To repeat, paragraph two states: "If the State presents evidence to the level of probable cause that any violation [of any criminal or criminal traffic law] occurred, the Court *shall* revoke this agreement [and] find the defendant guilty." (Emphasis added.) The word "shall" is generally considered to be mandatory. *Cf. Heritage Farms, Inc. v. Markel Ins. Co.*, 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465 (in statutory interpretation, "we presume that the word 'shall' is mandatory"). Thus, paragraph two requires that, if "the State presents evidence to the level of probable cause" that Beenken violated any criminal law, then the court must revoke the diversion agreement and "find [Beenken] guilty" of substantial battery; the court has no discretion to do otherwise. *See Barney*, 213 Wis. 2d at 362 (concluding that "once [a] term [is] included in the diversion agreement, [the parties are] entitled to rely on it and have it applied at [the] revocation hearing").

9

¶20     Here, the circuit court appeared to interpret the diversion agreement to allow the court to consider Beenken's record of compliance with conditions of the agreement other than that he not violate a criminal law, and to weigh that record against the State's introduction of a criminal complaint alleging that Beenken did so.  As explained above, this interpretation is contrary to the language in the diversion agreement that requires the circuit court to revoke the agreement if the State shows probable cause that Beenken violated a criminal law, regardless of Beenken's record of compliance with the agreement's other conditions.  Accordingly, the court erred in not confining its review to whether the State showed probable cause that Beenken violated a criminal law.

¶21     Beenken argues that the diversion agreement does "not create an automatic revocation process if Beenken picked up new charges," because the agreement requires the State to show probable cause that Beenken committed new crimes.  However, this argument does not refute the interpretation stated above that, if the State does show probable cause that Beenken violated a criminal law, the circuit court is required to revoke the diversion agreement.  Rather, Beenken's argument relates to whether the State made that showing, which I address in the next section.

## II.  Probable Cause

¶22     Having concluded that the diversion agreement unambiguously requires the circuit court to revoke the agreement if the State shows probable cause that Beenken violated a criminal law, I now address whether the State made that showing.

¶23     Consistent with the diversion agreement ("It is sufficient that the State show [probable cause] by introducing the criminal complaint…."), the State

10

introduced the criminal complaint in Juneau County case No. 2023CF160, alleging that Beenken committed felony bail jumping, misdemeanor battery, and disorderly conduct. "Whether a criminal complaint sets forth probable cause to justify a criminal charge is a legal determination this court reviews de novo." *State v. Reed*, 2005 WI 53, ¶11, 280 Wis. 2d 68, 695 N.W.2d 315; *see also* *State v. Ploeckelman*, 2007 WI App 31, ¶21, 299 Wis. 2d 251, 729 N.W.2d 784 ("On appeal, when reviewing the sufficiency of the evidence presented to support a finding of probable cause, we owe no deference to the circuit court's determination but review the matter de novo."); *State v. Moats*, 156 Wis. 2d 74, 84, 457 N.W.2d 299 (1990) (appellate court "'may examine the factual record *ab initio* and decide as a matter of law whether the evidence constitutes probable cause'" (quoted source omitted)).

¶24 "A complaint, to be sufficient, must set forth facts within its four corners that, together with reasonable inferences from those facts, would allow a reasonable person to conclude that a crime had been committed and that the defendant was probably the person who committed it. We evaluate a complaint in a common sense, rather than a hypertechnical manner." *State v. Chagnon*, 2015 WI App 66, ¶7, 364 Wis. 2d 719, 870 N.W.2d 27 (internal citations omitted). Put differently, probable cause is established when there "is a reasonable probability that the defendant committed a [crime]," *State v. Watson*, 227 Wis. 2d 167, 204, 595 N.W.2d 403 (1999), or when "the facts and the reasonable inferences drawn therefrom support the conclusion that the defendant probably committed a [crime]," *State v. Dunn*, 121 Wis. 2d 389, 397-98, 359 N.W.2d 151 (1984). "Simply stated, probable cause at a preliminary hearing is satisfied when there exists a believable or plausible account of the defendant's commission of a [crime]." *Id.* at 398.

¶25 "The criminal complaint may rely on hearsay to demonstrate probable cause, but the hearsay must be sufficiently reliable to make a plausible showing of probable cause…." *State v. O'Brien*, 2014 WI 54, ¶59, 354 Wis. 2d 753, 850 N.W.2d 8; *see also State v. Romero*, 2009 WI 32, ¶20, 317 Wis. 2d 12, 765 N.W.2d 756 ("The veracity of a hearsay declarant and the basis of the declarant's knowledge … 'may usefully illuminate the commonsense, practical question [of] whether there is probable cause….'" (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983))). "The reliability of the [hearsay] information may be shown by corroboration of details," while the basis of knowledge "is most directly shown by an explanation of how the declarant came by [the declarant's] information." *Romero*, 317 Wis. 2d 12, ¶¶21-22. The fact that hearsay information is provided by an alleged victim or witness of a crime weighs in favor of it being credited as reliable. *State v. Knudson*, 51 Wis. 2d 270, 276, 187 N.W.2d 321 (1971). In addition, "a preliminary hearing is not a proper forum to choose between conflicting facts or inferences, or to weigh the state's evidence against evidence favorable to the defendant." *Dunn*, 121 Wis. 2d at 398.

¶26 Consistent with the principles above, I now evaluate whether the criminal complaint introduced by the State at the hearing shows probable cause that Beenken violated a criminal law. As stated, the complaint in Juneau County case No. 2023CF160 alleges that Beenken committed felony bail jumping, misdemeanor battery, and disorderly conduct. Also as stated, the complaint alleges the following. Officer Smart observed injuries to A.B. that included "a bloody lip, bruises on her hands and red marks around her face and head." A.B. told Smart that, on the morning of July 23, Beenken "beat her with closed fists" and that all of the visible injuries "were from th[is] incident." M.L.B. told police that she saw A.B. running from Beenken "with blood coming from her mouth and

yelling at [Beenken] to get away from her," and that A.B. then "locked herself in her car" and drove away from Beenken "at a high rate of speed."

¶27 Although the complaint relies on hearsay, that hearsay is "sufficiently reliable to make a plausible showing of probable cause," *see O'Brien*, 354 Wis. 2d 753, ¶59, based on the declarants' direct witnessing of events and the corroboration of details such as Beenken chasing A.B., *see Knudson*, 51 Wis. 2d at 276 (victims and citizen witnesses considered reliable because they "do[] not expect any gain or concession in exchange for [their] information"); *Romero*, 317 Wis. 2d 12, ¶21 ("If a declarant is shown to be right about some things, it may be inferred that [the declarant] is probably right about other facts alleged.").

¶28 Taken together, "the facts and the reasonable inferences drawn therefrom," *i.e.*, A.B.'s initial statement detailing Beenken hitting her, Smart's observation of injuries consistent with A.B.'s description of the incident, and M.L.B.'s observation of A.B. running from Beenken with blood coming from her mouth, "support the conclusion that [Beenken] probably committed a [crime]." *See Dunn*, 121 Wis. 2d at 397-98. That is all that is required, and, accordingly, I conclude that the State showed probable cause that Beenken violated a criminal law.

¶29 At the probable cause hearing, the circuit court was presented with the criminal complaint as well as the unsigned statement of A.B. The court did not consider A.B.'s statement in reaching its decision. On appeal, Beenken argues that "the court was required to consider and weigh the [S]tate's hearsay evidence against [his] hearsay evidence," and the State argues to the contrary. Because Beenken does not cite legal authority supporting his argument, I do not consider it

13

further. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (internal citations omitted)). Moreover, I observe that the statement does not refute any of the specific allegations in the criminal complaint summarized above and, in fact, corroborates M.L.B.'s story by saying, "I told him that yes [Beenken] chased me."

¶30 Beenken does not address directly whether the criminal complaint shows probable cause that Beenken violated a criminal law. Instead, Beenken argues that the circuit court properly exercised its discretion by determining that the State did not show probable cause that Beenken violated a criminal law. However, Beenken does not cite any portion of the transcript of the court's remarks containing such a determination. Rather, the court's remarks, quoted above, indicate that the court ultimately sidestepped probable cause and determined that Beenken's compliance with other conditions in the diversion agreement weighed against the State's allegations that he violated a criminal law so as to warrant denial of the State's motion to revoke. In any event, as stated, this court independently reviews the existence of probable cause, and I have on my independent review concluded that the State met its burden of showing probable cause here.

¶31 In sum, because the State showed probable cause that Beenken violated a criminal law, the circuit court is required to revoke the diversion agreement.

**CONCLUSION**

¶32 For the reasons set forth above, I reverse the circuit court's order denying the State's motion to revoke the diversion agreement and remand to the circuit court with directions to enter an order granting the motion to revoke and to hold further proceedings as the court deems appropriate.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.